THE STATE OF VERMONT v. HUGH YOUNG.

*Political Boundaries.*

Where the channel of a river is the boundary between states, the sudden changing of such channel by artificial means, has, of itself, no effect to change such boundary, any more than it would in the case of private property.

Political boundaries, as well as boundaries of private property, may be established or changed by the acquiescence of proper parties ; but state boundaries cannot be changed by the acquiescence of towns, or of town authorities.

INDICTMENT for the illegal sale of intoxicating liquor in the town of Fairhaven. The respondent pleaded guilty of five offences, subject to the opinion of the supreme court as to the question of jurisdiction, upon the following agreed statement of facts :

" The store of the respondent, at which said sales were made, is located upon a piece of land containing seven acres and 24.32 rods, situated on the western boundary of the town of Fairhaven, which is also the western boundary of the county of Rutland, and of the state of Vermont. The western boundary of said town, county, and state, was fixed in 1789, at this point, as ' in the centre of the channel of Poultney river, at the deepest part thereof,' and has never been altered by the authorities of the states of New York and Vermont since that time. From the time said boundary line was so fixed and established, until the year 1834, said piece of land was on the easterly and Vermont side of said river, and was, for all purposes, treated and recognized as being within the limits of the county of Rutland, and state of Vermont.

" In the year 1834, some of the residents of that immediate vicinity, both in the state of Vermont and the state of New York, for the purpose of improving the facilities of bridging said river at or near said point, upon their own motion, and without any

sanction or direction of any recognized authority, thought it best to so change the channel and bed of said river, as to straighten the channel at that point; and, by shoveling and boring with a post-auger and other tools, cut through the then permanent embankment of said river, and thereby turned and changed the channel and bed thereof so as to leave said piece of land on the western or New-York side of said river; and said river has ever since continued to run in said new channel, or bed.

" So far as the local authorities of the state of New York are concerned, said piece of land has been considered and treated as being a part of that state, taxes having been assessed and collected thereon in that state : and the same having been treated as being within the jurisdiction of the authorities of that state, from soon after 1834, until about the year 1869, when the question of the jurisdiction of the courts of New York over said piece of land, was raised in the supreme court of that state, and by said court it was held that said piece of land was not within the jurisdiction of said court, the same being considered as still being in the state of Vermont, notwithstanding the change of the channel of said river as aforesaid; but that question was not passed upon by the higher courts of New York.

" Since said decision, the local authorities of New York have refrained from exercising any authority or jurisdiction over said piece of land. The local authorities of Vermont, at the point in dispute, have not undertaken to resume any authority or jurisdiction over said piece of land, excepting so far as this prosecution is concerned. The title-deeds of conveyance of said piece of land, were recorded in the land records of Fairhaven, up to the year 1834; but since that time, they have been recorded in the land records of the county of Washington, in the state of New York, and so continue to be recorded at this time.

" If, in the opinion of the supreme court of Vermont in and for the county of Rutland, said piece of land is within the state of Vermont, then the respondent is to be by said court, adjudged guilty, and sentenced to pay a fine of fifty dollars and costs of prosecution ; otherwise, he is to stand acquitted.

" Nothing is claimed on the part of the state, from said decision in the courts of New York ; and that fact is stated, only as a piece of history connected with the matter, as explanatory of the fact that neither state has exercised any jurisdiction over the premises in question since 1869."

The court, at the September term, 1873, adjudged the respondent guilty of five offences ; to which the respondent excepted.

*Bromley & Clark*, for the respondent.

Since the river was turned in 1834, the authorities of the state of New York have claimed, exercised, and received undisputed jurisdiction over the territory in question; taxes have been assessed and collected; deeds conveying said land have been recorded in the land records of Washington county in the state of New York, and the authorities of the state of Vermont have consented thereto, and acquiesced therein. The state of Vermont cannot now question the validity of such claim, or resume jurisdiction over said territory. *State* v. *Wagner*, 8 Albany Law Journal, No. 17, p. 262.

*E. J. Ormsbee*, state's attorney, for the state.

The act for which respondent is indicted, was committed within the admitted boundaries of the state and county, as originally fixed and established by competent authority. If the change of the location of the channel of Poultney river, had been the result of gradual accretion or decretion of either bank of the stream, then we admit that the course of the channel, " at the deepest part thereof," would still be the true boundary line; but the case shows that the change of the channel cutting off this piece of land, was not the result of accretion, but the result of an abrupt change by artificial aids and means. Such change does not, of itself, alter the line or boundary. Opinion Atty. Gen. Abbott's Nat. Dig. 353; *Trustees of Hopkins Academy* v. *Dickinson*, 9 Cush. 544.

Has the state lost its jurisdiction over the tract in question, by the acts of the persons and parties who have figured in this matter, as detailed in the case? Has there been such an acquiesence on the part of any one through whom such a right could be lost or gained to the state, as to affect the rights of the state? 1 Abbott's Nat. Dig. 357, §§ 4, 5. We insist that both of these questions must be answered in the negative. As to the question of acquiescence, it was held in the case of *Rhode Island* v. *Massachusetts*, 15 Pet. 233, and other cases cited in Abbott's Nat. Dig. 358, that in this respect, a political community should not be held to the same strict rules as an individual. Adjoining states cannot change or alter their boundary lines without the consent

of Congress. Can it be possible, that a portion of an isolated community, with the aid of a post-auger, may accomplish what the sovereign states are not permitted to do in this respect?

The opinion of the court was delivered by

WHEELER, J. In this case the state is seeking to convict and punish the respondent for a violation of its criminal law. The only question made is, whether the alleged criminal act was committed within or without the state. The place of the act is within the state as it was bounded when its government was established, and as the boundary remained at that place until the year 1834. This boundary was fixed in " the centre of the channel of Poultney river, at the deepest part thereof." In that year, according to the case as stated, the channel of Poultney river was changed by artificial means, so that thenceforth it cut the place where this act was committed, off from the rest of the state; and if that change in the river carried the boundary with it, that place has ever since the change been without the state. This change was not gradual, but sudden. In respect to the effect of such a change, Lord HALE laid down the rule to be, that if a river, " by a new recess from his ancient channel, encompass the land of another man, his propriety continues unaltered." This rule has always been followed, and is an established principle of law as to property in lands. *Trustees of Hopkins Academy* v. *Dickinson,* 9 Cush. 544. And it is as applicable to public as to private rights. *New Orleans* v. *United States,* 10 Pet. 662. Hence, this sudden change in the river, did not of itself have any effect upon the boundary. But it is insisted in behalf of the respondent, that if the boundary was not in fact changed by the change in the channel of the river, still, the new channel has since been so acquiesced in and treated as being the true boundary, that it cannot now be treated otherwise. The title to the land there does not appear to have been treated as being at all affected by the change. The local authorities of both states appear, for about thirty-five years after the change, to have treated this place as a part of the state of New York, for the purposes of taxation and the record

of private titles. Then those of New York appear to have ceased, and those of Vermont to have continued to so treat it until now. These facts constitute the acquiescence relied upon. There is no doubt but political boundaries, as well as those of private property, may be established or changed by acquiescence of proper parties. *Corinth* v. *Newbury*, 13 Vt 496 ; *Rhode Island* v. *Massachusetts*, 4 How. 591. And these acts by these authorities would, doubtless, have been sufficient and long enough continued to change this boundary and establish it in this new place, if the constituencies of the authorities had been the only parties that were to be affected by the change. But these were merely the local town authorities, acting, so far as they did act, for their respective towns, and not for the states ; and a change of the boundary between these two states, could be directly made, only by the states themselves, acting in their sovereign capacities, and probably not by them even without the sanction of Congress, expressed by act, or perhaps by acquiescence. These towns could not, by any action they or their authorities might take, affect the state boundary at all, directly ; and it is plain that they could not do indirectly, by acquiescence, what they could not do directly, by action. The case states that this line has never been changed by the authorities of New York and Vermont. This was probably intended to mean, that it has not been changed unless by acquiescence. But taking that view of this statement, there is nothing shown that amounts to any acquiescence by either state as a state. The authority of the state is constantly over all places within the state ; but there are many places where, for long spaces of time, there is no express assertion of authority, and no occasion for such assertion, by any state officer, and many where, probably, there never was any such assertion of authority at all ; but still, the state would not thereby lose jurisdiction over these places. There is nothing stated in the case that shows that any authority or person has ever, as against this state, claimed that the inhabitants of this piece of land were not amenable to the laws of this state, until this prosecution, and so no occasion appears, before this case arose, for the direct assertion of state authority there ;

73

and no claim of authority, adverse to the authority of this state, appears, that the authorities of this state could yield acquiescence to. This prosecution is a direct assertion of authority by the state over the respondent at that place, and, for aught that appears in this case, the prosecuting officers are as well entitled to maintain it, as they would have been if there had been no resident upon, nor private ownership of, this piece of land, during all the time for which the acquiescence is claimed.

The judgment is, that there is no error in the proceedings in the county court.